**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GIASSON AEROSPACE SCIENCE, INC.
and GIASSON DESIGN, INC.

 Plaintiffs,

v.              Case No. 14-11358

RCO ENGINEERING, INC.

 Defendant.
              /

**OPINION AND ORDER DISMISSING CASE**

Pending before the court are the parties' supplemental briefs on the single remaining claim in this case, Count III of the First Amended Complaint for fraudulent inducement of the settlement agreement. (Dkt. ## 27, 29.) In its previous opinion and order, the court granted in part and denied in part Defendant's Motion to Dismiss. (Dkt. # 23.) That opinion disposed of Counts I and II (breach of contract) and Count IV (silent fraud), but left standing Count III (fraudulent inducement). The court did not address Defendant's argument, briefly raised in its Motion to Dismiss, that the proper procedural vehicle for Plaintiffs' fraud claim was a motion under Federal Rule of Civil Procedure 60 for relief from the judgment in the original action, *Giasson Aerospace, Inc. v. RCO Engineering, Inc.*, 680 F. Supp. 2d 830 (E.D. Mich 2010), which would be subject to the one-year limitations period and the stringent standard set forth in that Rule. (Def.'s Mem. 1 n.1, Dkt. # 18, Pg. ID 498.) Instead, the court ordered supplemental briefing on whether the fraud claim must be adjudicated in a Rule 60 motion in the original action.

(Dkt. # 26.) The issue is now fully briefed and the court determines that a hearing is not necessary. See E.D. Mich. L.R. 7.1(f)(2). For the following reasons, the court will dismiss Plaintiffs' claim for fraudulent inducement.

## I. BACKGROUND

For a full exposition of the parties' history, see the court's November 14, 2014 Opinion and Order. (Dkt. # 23.) Below is a summary of the facts relevant to the now pending fraud claim.

In 2008, Giasson Aerospace Science, Inc. and Giasson Design, Inc. (collectively, "Giasson") sued RCO Engineering, Inc. ('RCO"), alleging that RCO was using Giasson's intellectual property to design airplane seats it planned to sell to Gulfstream Aerospace Corporation ("Gulfstream"). That case proceeded through some discovery and dispositive motion briefing, but was eventually stayed in anticipation of the parties reaching a settlement. *Giasson Aerospace, Inc. v. RCO Engineering, Inc.*, No. 08-13667, Dkt. # 126 (E.D. Mich. June 23, 2010). Before the stay and during discovery, RCO responded to interrogatories and produced financial information concerning the prices at which it planned to sell seats to Gulfstream, though objected to the request for such information "because the sales price may be subject to change as Gulfstream adjusts the technical requirements for the seats." (Dkt. # 12-2, Pg. ID 64.) RCO disclosed that the projected sales prices were as follows: $36,000 for a single power seat, $22,000 for a single manual seat, and $18,000 for a double seat.

A few days after RCO made the above disclosure, while the parties were setting the terms of settlement negotiations, and before the stay was imposed, Giasson again requested financial and pricing information. (Dkt. # 12-3, Pg. ID 71-72.) RCO answered

by referring Giasson to its recent interrogatory responses.[1] (Dkt. # 12-4, Pg. ID 76.) Shortly thereafter the parties agreed to a stay and the case settled.

Some time after the case settled, Giasson came into possession of invoices and documents from late 2011 to 2014 that indicated RCO was selling seats to Gulfstream at prices significantly higher than those disclosed in discovery and during settlement negotiations in 2010. (Dkt. # 12-8, Pg. ID 101-31.) Giasson demanded an audit of RCO's sales as provided for in the settlement agreement, requesting information about both the price and quantity of seats sold. RCO refused to disclose pricing information, arguing that the settlement agreement allowed only an audit of the number of seats sold. In response, Giasson filed the instant action, alleging that RCO fraudulently induced the settlement in the first action by quoting false prices during discovery and settlement negotiations. (Dkt. # 1.)

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527

---

[1] Gaisson repeatedly claims that RCO made this second disclosure or referral while the lawsuit was stayed. *See, e.g.*, Pls.' Supp. Br. 9. The documents attached to Giasson's First Amended Complaint leave no doubt that this is incorrect. The original interrogatory response was sent on January 29, 2010, (Dkt. # 12-2, Pg. ID 66), the email answer that referred Giasson's counsel to that response was sent on February 5, 2010, (Dkt. # 12-4, Pg. ID 76), and the case was stayed on February 10, 2010, *Giasson Aerospace, Inc. v. RCO Engineering, Inc.*, No. 08-13667, Dkt. # 126 (E.D. Mich. June 23, 2010). The disclosures at issue occurred while discovery was ongoing and the case was still active.

(6th Cir. 2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

However, to survive a motion to dismiss, a complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) Additionally, on a motion to dismiss, a court is usually limited to the complaint and attached exhibits, but it may also consider "public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss so long as they are refereed to in the complaint and are central to the claims contained therein." *Erie County v. Morton Salt, Inc.*, 702 F.3d 860, 863 (6th Cir. 2012) (quoting *Bassett v. Nat'l Coll. Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008)).

### III. DISCUSSION

Giasson's only remaining claim rests on its allegation that RCO fraudulently induced settlement of the case by disclosing false pricing information during discovery and settlement negotiations. RCO denies that the information was false, but, more importantly for present purposes, argues that Michigan law does not provide for an independent cause of action for fraudulently inducing a settlement when a mechanism like Rule 60 is available.

RCO is correct. Where a plaintiff seeks to avoid a judgment or settlement that he believes was fraudulently procured, "a second suit for fraud, based on perjury ("intrinsic fraud"), may not be filed against a person involved in a first suit, if the statutes and court rules provide an avenue for bringing the fraud to the attention of the first court and asking for relief there." *Daoud v. De Leau*, 565 N.W.2d 639, 649 (Mich. 1997). The primary teaching of the Michigan Supreme Court on this matter is that "the court rules are a primary source for determining the means by which a person aggrieved by a judgment may seek to remedy the situation." This principle applies with equal force where the perjury or fraud occurs before a case is settled by the mutual agreement of the parties. *Triplett v. St. Amour*, 507 N.W.2d 194, 194 (Mich. 1993).

In two lead cases, the Michigan Supreme Court held that Michigan Court Rule 2.612(C) provided an avenue for bringing fraud to the attention of the first court and afforded relief from judgments induced by fraud, thus eliminating the need for an independent cause of action. *Triplett*, 507 N.W.2d at 194; *Daoud*, 565 N.W.2d at 649. MCR 2.612(C), like Rule 60, allows an aggrieved party to file a motion in the original action, within a one-year limitations period, and request that the court set aside the judgment. Justice Riley noted that

5

> the entirety of the court rules and accompanying statutory provisions appropriately balance the competing interests of deterring fraud, vindicating the interests of the defrauded party, and maintaining finality of judgments. MCR 2.612(C) provides a balanced method of revoking a judgment induced by fraud, while also allowing for the finality of judgments after the passage of reasonable time.

*Triplett*, 507 N.W.2d at 198 (Riley J, concurring in part and dissenting in part). "Where statutes and court rules provide effective means for dealing with a judgment fraudulently obtained through perjury, it is neither sound law nor sound policy to permit a separate cause of action for fraud." *Daoud*, 565 N.W.2d at 648.

Federal Rule of Civil Procedure 60(b) provides the same avenue for redress as MCR 2.612(C) and thus no independent cause of action is available to Plaintiffs under Michigan law. The language and structure of both rules are nearly identical, each providing for relief from a final judgment where there has been fraud, misrepresentation, or misconduct by an opposing party. Fed. R. Civ. P. 60(b)(3); MCR 2.612(C)(1)(c). Further, MCR 2.612 grew out of Rule 60(b) of the Federal Rules of Civil Procedure. *Carrell v. Carrell*, No. 238103, 2003 WL 22902868, at *5 n.4 (Mich. Ct. App. Dec. 9, 2003) (Levin, J dissenting). The rules are so similar that this court has little trouble concluding that Michigan courts would hold that no cause of action lies here.

Giasson advances numerous arguments attempting to avoid the holdings in *Triplett* and *Daoud* and the one-year limitations period of Rule 60. First, Giasson argues that Michigan law does recognize an independent cause of action in this scenario, citing a couple of World War II era cases. Def.'s Supp. Br. 2 (citing *Jack Mann Chevrolet Co. v. Assocs. Inv. Co.*, 125 F.2d 778, 783, 785-86 (6th Cir. 1942); *Kordis v. Auto Owners, Ins. Co.*, 311 Mich. 247 (1945)). *Krodis* did hold that a plaintiff in an original action may

6

institute a second action for damages when he alleges fraud in inducing the judgment. *Krodis* and similar cases, however, are no longer good law. Justice Riley addressed the matter at some length in *Triplett*, dissenting from the majority who declined to disturb *Kordis*' holding, and arguing that "continued adherence to *Kordis* is misguided." 507 N.W.2d at 199. The *Triplett* majority precluded an independent cause of action for defendants in the original action, but left open the question of whether plaintiffs would be similarly limited. Justice Riley persuasively argued that this created a senseless distinction in Michigan law; both plaintiffs and defendants to the original action should be required to seek redress through MCR 2.612, she wrote. *Id.* Her position was eventually adopted in *Daoud*, where the unanimous court more broadly held that a litigant in an original action may not file a second action "against a person involved in the first suit," eliminating the plaintiff-defendant distinction. 565 N.W.2d at 649. Giasson's reliance on *Kordis* and similar cases is misguided.

    Next, Giasson argues that the "savings clause" of Rule 60 provides an independent cause of action. Federal Rule of Civil Procedure Rule 60(d)(1) states that the rule does not limit the court's power to "entertain an independent cause of action to relieve a party from a judgment, order, or proceeding." As the Sixth Circuit has explained, it is not entirely accurate to say that Rule 60 *establishes* an independent cause of action, it merely "does not limit" such an action. *Mitchell v. Rees*, 651 F.3d 593, 595 (6th Cir. 2011) (quoting *Barrett v. Sec'y of Health and Human Servs.*, 840 F.2d 1259, 1262-63 (6th Cir. 1987)). As this court's jurisdiction is based on the diversity of the parties, and because Michigan law *does* preclude the availability of such an action in this scenario, Rule 60(d)(1) cannot operate here. *See Erie R. Co. v. Tompkins*, 304 U.S.

7

64, 73 (1938) (federal courts sitting in diversity apply substantive state law). Even if the "savings clause" could operate in this context, the elements of an independent cause of action are not met. The independent cause of action requires,

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Mitchell*, 651 F.3d at 595. Moreover, an independent action is "available only to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). The court is not convinced that a grave miscarriage of justice would occur if the judgment were enforced. The Supreme Court has held that the mere failure to make a "full disclosure" of relevant information during a civil case does not, by its nature, rise to the level of a grave miscarriage of justice. *Id.* Here, even if the court assumes that RCO's reference to its interrogatory responses was somehow misleading,[2] such conduct amounted to no more than a failure to make a full disclosure of relevant information. Moreover, RCO's interrogatory response was accompanied by a disclaimer that the quoted prices were subject to change, a circumstance that should have alerted Giasson to the possibility that, over time, the pricing information might become outdated.

Giasson further argues that "enforcement of the fraudulently obtained agreement would clearly be manifestly unconscionable, and a grave miscarriage of justice to

---

[2] The court is highly skeptical. Giasson has offered no evidence showing that the representations made by RCO were false at the time RCO made them or when Giasson relied upon them. Giasson points only to invoices from months or years later, showing that, as RCO warned might happen, prices had risen.

Gaisson will result." Pls.' Supp. Br. 6. Again, even assuming Giasson is correct about the alleged injustice, this is beside the point. The rule embodied in MCR 2.612 and Federal Rule of Civil Procedure 60 satisfies more than the single objective of vindicating the interests of an allegedly defrauded party. The rule also seeks to ensure the finality of judgments. Michigan courts are rightly concerned about the possibility that allowing independent actions for fraud could lead to an endless proliferation of cases, with each new case arguing that the previous case was affected by fraud. *Daoud*, 565 N.W.2d at 649. The wrong perpetrated by fraudulent settlements "is of course a grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied." *Columbia Cas. Co. v. Klettke*, 244 N.W. 164, 165 (Mich. 1932) (citing *Pico v. Cohn*, 25 P. 970, 971 (Cal. 1891)). Michigan case law, court rules, and statues reflect the measured judgment that, in most cases, allegations of fraud should be raised in the original action and be subject to reasonable time limits.

     Finally, Giasson argues that if state law is to control in this case, the rule barring this type of action established in *Triplett* and *Daoud* does not apply because the alleged fraud occurred "outside the context of discovery and while the lawsuit was stayed" and that this somehow deprived Giasson of its opportunity to challenge RCO under the court rules. Pls.' Supp. Mem. 9. First, as already explained, *supra* n.1, the communications at issue occurred before the case was stayed and while discovery was ongoing. Second, Giasson could have, at any time, moved the court to lift the stay and address, through discovery motions, any suspected duplicitous conduct by RCO. Giasson's regret that it did not do so at that time is no reason to allow this action to proceed now. Third,

9

Giasson had a year after settlement to address any alleged fraud through a Rule 60 motion.[3] In sum, this argument is essentially the same as the above-addressed argument, that is, that the rule would operate harshly here. That argument is unavailing.

Giasson's only avenue for pursuing its fraud claim is to file a motion for relief from judgment in the original action. That motion, however, would likely be time barred. Regardless, no cause of action lies here under Michigan law.

### IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion to Dismiss (Dkt. 18) is GRANTED as to Count III for fraudulent inducement. A separate judgment will follow.

 s/Robert H. Cleland

---

[3] Giasson does not appear to argue that it discovered the fraud after the one-year limitations period. Even if it had, Michigan cases indicate that *Triplett* and *Daoud* would still apply. An independent action for fraud would still be barred when the fraud is discovered after MCR 2.612's one-year limitations period because a contrary rule would not serve "the public policy behind the finality of judgments." *See Nederlander v. Nederlander*, 517 N.W.2d 768, 770 (Mich. Ct. App. 1994). Instead, Michigan courts have held that "the exercise of due diligence during the course of liberal discovery should expose any intrinsic fraud that may be present . . . ." *Id.* Relatedly, it is of little moment that Giasson voluntarily agreed to a stay and forfeited its right to further formal discovery.

           ROBERT H. CLELAND
           UNITED STATES DISTRICT JUDGE

Dated: May 9, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 9, 2016, by electronic and/or ordinary mail.

           s/Lisa Wagner
           Case Manager and Deputy Clerk
           (313) 234-5522